IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION,<br><br>  Plaintiff,<br><br>  v.<br><br>PETER G. MYLONAS, LAW OFFICES OF PETER GEORGE MYLONAS, P.C., and ANASTASIOS PAPADOPOULOS,<br><br>  Defendants. | CIVIL ACTION<br>NO. 14-5760 |

## OPINION

**Slomsky, J.**                                                                                  **July 15, 2015**

### I.    INTRODUCTION

In this case, Westport Insurance Corporation ("Westport") has filed a declaratory judgment action against Anastasios Papadopoulos ("Papadopoulos") and Peter G. Mylonas and the Law Offices of Peter George Mylonas, P.C. (collectively, the "Mylonas Defendants"). Westport seeks a ruling from this Court that its liability to the Mylonas Defendants under a professional liability insurance policy (the "Policy") is limited to $500,000. (Doc. No. 1 at 7.) Westport defended the Mylonas Defendants pursuant to the Policy in a state court lawsuit filed by Papadopoulos. In the lawsuit, Papadopoulos obtained a $525,000 verdict against the Mylonas Defendants.

Papadopolous has filed an Amended Answer and Counterclaims against Westport and the Mylonas Defendants.[1]  (Doc. Nos. 27, 28.)  The counterclaims essentially involve allegations

---

[1] Papadopoulos refers to his claims against the Mylonas Defendants as "counterclaims." These claims are actually crossclaims, not counterclaims, as the Mylonas Defendants are Papadopoulos's co-defendants in this case. See Fed. R. Civ. P. 13(g) (explaining when a party

that Westport has failed to recognize the full extent of its liability to the Mylonas Defendants under the Policy.  Papadopoulos's interest in Westport's position that there is a $500,000 limitation of liability under the Policy arises from the $525,000 verdict he received in his favor in state court.  In Count I of the Amended Counterclaims, Papadopoulos seeks a declaratory judgment that the state court lawsuit constitutes more than one "claim" under the Policy, thus establishing that Westport's liability to the Mylonas Defendants is $1,000,000, the full amount of coverage, instead of $500,000 per claim as provided in the Policy.  (Doc. No. 27 at 10-11; Doc. No. 28 at 4-5.)   In Count II, Papadopoulos seeks a declaratory judgment that professional liability insurance policies issued to lawyers that have "eroding limits" are void as against the public policy of Pennsylvania.  (Doc. No. 27 at 12-16; Doc. No. 28 at 6-10.)  Insurance policies with "eroding limits" reduce the amount of coverage available to indemnify an insured by the expenses incurred by the insurer in defending the insured.  In Count III, Papadopoulos asserts that Westport and the Mylonas Defendants have acted in bad faith by unreasonably eroding the limits of the Policy in defending against the state court lawsuit filed by Papadopoulos.[2]  (Doc. No. 27 at 17-20; Doc. No. 28 at 11-14.)

---

may assert a crossclaim against a co-party).  Counterclaims are asserted against the opposing party in a lawsuit.

[2]  At a hearing on the Motion to Dismiss held on June 17, 2015, Papadopoulos agreed to dismiss Count III of the Amended Counterclaims with prejudice, conceding that a review of the case law made it improbable that the claim would succeed.  (See Doc. No. 42 at 3.)  On June 22, 2015, Papadopoulos filed a Motion to Withdraw Count III of the Amended Counterclaims without prejudice.  Westport and the Mylonas Defendants oppose Papadopoulos's Motion, and assert that Count III should be dismissed with prejudice in accordance with Papadopoulos's stipulation at the June 17 hearing.  (See Doc. Nos. 43, 44.)  For reasons stated below, Count III of the Amended Counterclaims will be dismissed with prejudice.

Before the Court is Westport and the Mylonas Defendants' Motion to Dismiss Counts II and III of Papadopoulos's Amended Counterclaims.[3] (Doc. Nos. 29, 30.) For reasons that follow, the Motion to Dismiss (Doc. Nos. 29, 30) will be granted, and Counts II and III of Papadopoulos's Amended Counterclaims will be dismissed with prejudice.

## II. BACKGROUND

In December 2010, Westport issued the Policy to the Law Offices of Peter George Mylonas, P.C. (Doc. No. 1 ¶¶ 2, 12.) Westport defended Peter Mylonas, an attorney licensed in Pennsylvania, and the Law Offices of Peter George Mylonas, P.C. (collectively, the "Mylonas Defendants") under the terms of the Policy in the state court lawsuit filed by Papadopoulos. (Id. ¶¶ 23-26.) Papadopoulos received a judgment in his favor in the amount of $525,000, and Westport's defense of the Mylonas Defendants under the Policy continues to this day. (Id. ¶¶ 26-28.)

The Policy has a per-claim limit of liability of $500,000 and an aggregate limit of liability of $1,000,000. (Id. ¶ 14.) As noted, in the present case Westport has filed a Complaint seeking a declaratory judgment that its liability under the Policy is limited to $500,000 on the basis that Papadopoulos's state court lawsuit against the Mylonas Defendants constitutes only one "claim" under the Policy. (Id. ¶¶ 29-31.)

---

[3] Westport and the Mylonas Defendants also move to strike pages 1-3 of Papadopoulos's Amended Answer and Counterclaims (Doc. Nos. 27, 28) pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The pages in question contain a summary of what happened in the state court case between Papadopoulos and the Mylonas Defendants, which led to the filing of the instant case. In the state case, Papadopoulos sued Mylonas, an attorney, for malpractice, and the jury ruled in Papadopoulos's favor. The Motion to strike these pages will be denied for reasons stated on the record by the Court at the hearing on the Motion held June 17, 2015.

On February 18, 2015, Papadopoulos filed an Answer to the Complaint with Counterclaims against Westport and the Mylonas Defendants. (Doc. Nos. 23, 24.) On March 31, 2015, Papadopoulos filed an Amended Answer with Counterclaims. (Doc. Nos. 27, 28.) Westport has filed a Motion to Dismiss Counts II and III of Papadopoulos's Amended Counterclaims. (Doc. No. 29.) The Mylonas Defendants have joined in Westport's Motion. (Doc. No. 30.) The Motion is now ripe for a decision.[4]

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third

---

[4] In deciding the Motion to Dismiss, the Court has considered the following: Papadopoulos's Amended Answer and Counterclaims against Westport and the Mylonas Defendants (Doc. Nos. 27, 28); Westport's Motion to Dismiss Papadopoulos's Counterclaims (Doc. No. 29); the Mylonas Defendants' Joinder to Westport's Motion (Doc. No. 30); Papadopoulos's Response in Opposition to the Motion (Doc. No. 31); Westport's Reply in Further Support of the Motion (Doc. No. 34); the arguments of counsel at the hearing on the Motion held on June 17, 2015; Westport's Supplemental Brief in Support of the Motion (Doc. No. 40); Papadopoulos's Supplemental Brief in Opposition to the Motion (Doc. No. 41); Papadopoulos's Motion to Withdraw Count III of the Amended Counterclaims without Prejudice (Doc. No. 42); Westport's Opposition to Papadopoulos's Motion (Doc. No. 43); the Mylonas Defendants' Joinder to Westport's Opposition (Doc. No. 44); and Papadopoulos's Supplement in Opposition to Westport's Motion to Dismiss (Doc. No. 45).

Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether a complaint survives a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**IV.   ANALYSIS**

    **A.   Count II of Papadopoulos's Amended Counterclaims Will Be Dismissed with Prejudice**

In Count II of the Amended Counterclaims, Papadopoulos seeks a declaration from this Court that "eroding insurance policies for legal professionals are against public policy and void as a matter of law, and, in the alternative, that such policies are void to the extent they reduce

5

available coverage below $100,000 per year per claim and $300,000 per year on aggregate." (Doc. No. 27 at 12; Doc. No. 28 at 6.)  Papadopoulos bases his request on Rule 1.4(c) of the Pennsylvania Rules of Professional Conduct.  The Rule states as follows:

> Rule 1.4. Communication. . . .
>
> > (c) A lawyer in private practice shall inform a new client in writing if the lawyer does not have professional liability insurance of at least $100,000 per occurrence and $300,000 in the aggregate per year, subject to commercially reasonable deductibles, retention or co-insurance, and shall inform existing clients in writing at any time the lawyer's professional liability insurance drops below either of those amounts or the lawyer's professional liability insurance is terminated. A lawyer shall maintain a record of these disclosures for six years after the termination of the representation of a client.

Pa.R.P.C. 1.4(c).

Westport and the Mylonas Defendants oppose Papadopoulos's contention that eroding policies for legal professionals are void as against Pennsylvania public policy.  They submit that the Pennsylvania Rules of Professional Conduct do not provide a basis for a cause of action, and that insurance policies with eroding limits are not against the "dominant public policy" of Pennsylvania.[5]  (Doc. No. 29 at 9-12.)  For reasons that follow, Count II of the Amended Counterclaims will be dismissed with prejudice.

### 1. Rule 1.4(c) of the Pennsylvania Rules of Professional Conduct does not support Papadopoulos's contention that eroding insurance policies for legal professionals are void as against Pennsylvania public policy

Papadopoulos concedes that the Rules of Professional Conduct are "silent regarding 'eroding policies,'" but argues that Rule 1.4(c) makes it "clear that the [Pennsylvania] Supreme

---

[5] Westport also contends that the Pennsylvania Rules of Professional Conduct only regulate the relationship between attorney and client.  (Doc. No. 29 at 9.)  Westport argues that, as an insurance company, the Rules are not applicable to it.  (Id.)  Since, as discussed below, Count II will be dismissed on other grounds, the Court need not address this argument.

Court intended to prohibit insurance companies from reducing the required amounts of coverage." (Doc. No. 27 at 15; Doc. No. 28 at 9.)  Papadopoulos further contends that an "eroding policy offends traditional notions of fairness" because "[a]ttorneys purchase liability insurance to protect their clients."  (Doc. No. 27 at 14; Doc. No. 28 at 8.)  An eroding policy "subverts that intent by using liability coverage to pay the insurance company's litigation expenses and attorney's fees, rather than protecting the attorney by making the injured party whole against their losses."  (Id.)

In <u>Heller v. Pennsylvania League of Cities & Municipalities</u>, the Pennsylvania Supreme Court stated that courts should be reticent to declare contracts void as against public policy:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.  As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy. . . .  Only dominant public policy would justify such action.  In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy.  The courts must be content to await legislative action.

32 A.3d 1213, 1220-21 (Pa. 2011).  The court went on to state that

> [i]t is only when a  given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of a community in so declaring [that the contract is against public policy].

<u>Id.</u> at 1221.

In the present case, Papadopoulos points to no "plain indication" through long governmental practice, statutory enactments, or obvious ethical and moral standards that it is against the "dominant public policy" of Pennsylvania for lawyers to carry professional liability insurance policies with eroding limits.  Despite this absence, Papadopoulos bases his position on Rule 1.4(c) of the Pennsylvania Rules of Professional Conduct quoted above.  However, the type

7

of insurance policy Papadopoulos seeks to have the Court declare void as against the "dominant public policy" of Pennsylvania does not violate this Rule.  Rule 1.4(c) is placed in a section of the Rules entitled "Communication," and only requires an attorney to "inform a new client in writing" if the lawyer does not have professional liability insurance of at least $100,000 per occurrence and $300,000 in the aggregate per year.  The Rule does not prohibit a lawyer from carrying professional liability insurance in less than these amounts, and it is silent on eroding insurance policies.  Accordingly, a lawyer does not violate Rule 1.4(c) by merely carrying an eroding policy, even if the coverage amount has eroded below $100,000 per occurrence and $300,000 in the aggregate.

Moreover, a violation of a Rule of Professional Conduct by itself does not subject an attorney to legal liability.  The preamble to the Rules states that a "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached."[6]  Preamble, Pa.R.P.C.  The fact that noncompliance with a Rule neither constitutes a violation of Pennsylvania law nor raises a presumption that a legal duty has been breached undermines Papadopoulos's contention that the Rules are an expression of "dominant public policy" in Pennsylvania.

---

[6] The preamble to the Pennsylvania Rules of Professional conduct also states as follows:

> The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies.  They are not designed to be a basis for civil liability.  Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.  The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.

Preamble, Pa.R.P.C.

In sum, Rule 1.4(c) of the Pennsylvania Rules of Professional Conduct does not support Papadopoulos's claim that it is against the "dominant public policy" of Pennsylvania for lawyers to carry eroding professional liability insurance policies. Such policies do not run afoul of the Rule. In addition, the Rules state that a violation of a Rule should "not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." Preamble, Pa.R.P.C. Therefore, Rule 1.4(c) is not a plausible basis for arguing that eroding insurance policies for legal professionals are "against the dominant public policy" of Pennsylvania.

### 2. The case law that Papadopoulos relies on does not support his position

Papadopoulos relies on several cases to support his claim that eroding insurance policies covering legal professionals are against the "dominant public policy" of Pennsylvania. These cases are distinguishable from the present case and are not convincing that Papadopoulos has stated a plausible claim.

In <u>Heller v. Pennsylvania League of Cities & Municipalities</u>, the Pennsylvania Supreme Court invalidated a clause in a municipality's insurance policy that excluded certain municipal employees from receiving the uninsured motorist (UM) and underinsured motorist (UIM) coverage[7] included in the policy. 32 A.3d 1213, 1222 (Pa. 2011). Pursuant to Pennsylvania's Motor Vehicle Financial Responsibility Law (the "MVFRL"), insurers are required to offer UI/UIM coverage in motor vehicle liability insurance policies. <u>See</u> 75 Pa. Cons. Stat. § 1731(a).

In <u>Heller</u>, the municipality's insurance policy excluded from UI/UIM coverage any employee who receives workers' compensation. 32 A.3d at 1223. This exclusion had the effect

---

[7] Uninsured motorist (UM) or underinsured motorist (UIM) coverage is designed to help the covered person pay for a loss associated with a motor vehicle accident that was caused by another person who either does not have automobile insurance or has insurance with liability limits that are too low to cover costs associated with the loss.

of rendering the UI/UIM coverage illusory, as almost all employees who could receive UI/UIM coverage would also receive workers' compensation.  Id.  Hence, the municipality had paid for coverage that, by virtue of the exclusion, would almost never attach.  Id.  The Pennsylvania Supreme Court examined the policy behind the MVFRL and concluded that upholding the exclusion would "thwart the purpose of the MVFRL by allowing an insurer to deny benefits for which their insured paid a premium."  Id. at 1225.  The court reasoned that "[w]hile the [municipality] may have received a reduced premium in exchange for what [the insurer] deems 'limited' coverage, an insured cannot contract for illusory coverage."  Id.  Therefore, the court declared the exclusion as void against public policy.  Id. at 1225-27.

The Pennsylvania Supreme Court in Heller based its decision on the Pennsylvania legislature's policy in enacting the MVFRL and the obvious inequity of permitting an insurer to collect premiums for illusory coverage.  See id. at 1222-27.  In the present case, Papadopoulos bases his argument on Rule 1.4(c) of the Pennsylvania Rules of Professional Conduct.  As discussed above, the type of insurance policy Papadopoulos seeks to have this Court declare void as against public policy does not run afoul of this Rule, which does not render a lawyer who carries such a policy subject to legal liability.  In addition, the Rules are promulgated by the Pennsylvania Supreme Court to "provide guidance to lawyers."  They are not laws enacted by the legislature—like the MVFRL—and therefore are not an indication of "dominant public policy" in Pennsylvania.  Simply put, Rule 1.4(c) is not a plausible basis for Papadopoulos's position that eroding insurance policies for legal professionals are against the "dominant public policy" of Pennsylvania.

Moreover, the court's ruling in Heller was based on the inequity of a municipality paying insurance premiums for illusory insurance coverage.  In the present case, Papadopoulos was not

the insured.  He paid no premiums to Westport.  Rather, the Mylonas Defendants were the insured.  They paid the premiums.  In exchange for the Mylonas Defendants' premiums, Westport paid for the Mylonas Defendants' legal defense in the state court action.  The Mylonas Defendants therefore received real, not illusory, insurance coverage in exchange for their premiums.

NIC Insurance Co. v. PJP Consulting, LLC also does not support Papadaopolous's position.  Civ. No. 09-0877, 2010 WL 4181767 (E.D. Pa. Oct. 22, 2010).  In that case, an insurance policy that NIC issued to a restaurant, Cavanaugh's River Deck, limited coverage for injuries arising out of an assault and battery to $50,000.  Id. at *2.  The insurance policy also contained a "defense within limits" provision that reduced the amount of coverage available to indemnify Cavanaugh's by the expenses NIC incurred in defending Cavanaugh's.[8]  Id.  NIC sought a declaratory judgment that its obligation to defend Cavanaugh's in a lawsuit in state court arising out of an assault and battery was limited to $50,000.  Id. at *1.

In NIC Insurance, the court noted that "defense within limits" provisions may be against Pennsylvania public policy in situations where the amount of potential coverage is so low that "legal expenses would almost certainly exhaust the [insurance policy] limits long before trial." Id. at *6.  However, the court declined to exercise jurisdiction over the action.  It explained that neither the Pennsylvania legislature, insurance department, nor courts have addressed the enforceability of "defense within limits" provisions.  The court concluded that "[t]his declaratory judgment action presents unsettled issues under Pennsylvania law that are best decided by the Pennsylvania judiciary." Id. at *10, *18.

---

[8]  A policy with a "defense within limits" provision is an "eroding policy."

11

Papadopoulos argues that the result in NIC Insurance would have been different if it had been decided after Heller. (Doc. No. 41 at 4.) This is because, Papadapolous contends, Heller "clearly holds that illusory insurance policies can and should be invalidated as a matter of public policy." (Id.) Therefore, if the court in NIC Insurance could have relied on Heller, it would have held that "defense within limits" provisions are void as against public policy.

This speculative argument is unavailing. For reasons discussed above, Heller is distinguishable from both the present case and NIC Insurance. Heller did not involve "eroding policies" or "defense within limits" provisions. Rather it involved an exclusion clause in an insurance policy that made certain coverage under the policy illusory. "Eroding policies" or "defense within limits" provisions are not illusory, as the insured does receive a benefit in exchange for premiums. Moreover, in reaching its conclusion that the exclusion clause was void as against public policy, the court in Heller relied upon the Pennsylvania legislature's policy in enacting the MVFRL and the obvious inequity of permitting an insurer to collect premiums for illusory coverage. In the present case, Papadopoulos's argument does not rely upon any statute requiring the purchase of minimum insurance coverage, and the insurance coverage at issue is not illusory.

Papadopoulos also relies upon Gibson v. Northfield Insurance Co., 631 S.E.2d 598 (W.Va. 2005). In that case, the West Virginia Supreme Court of Appeals invalidated as against West Virginia public policy an eroding insurance policy purchased by the City of Charleston. In so holding, the West Virginia court relied upon a state statute to identify the public policy. Id. at 606. By contrast, in this case, Papadopoulos relies on a Rule of Professional Conduct that does not prohibit the type of policy he seeks to invalidate. Furthermore, a West Virginia court's

interpretation of West Virginia public policy is not persuasive authority for how this court should interpret Pennsylvania public policy.

Lastly, Papadopoulos argues that "the existence of [a] public policy is a dispute of fact to be decided by a jury." (Doc. No. 41 at 7.) In support of his position, Papadopoulos cites General Refractories Co. v. First State, Civ. No. 04-3509, 2012 WL 568936 (E.D. Pa. Feb. 22, 2012). In that case, General Refractories Company ("GRC"), a manufacturer and supplier of asbestos-containing products, sued its insurance carriers for a declaration that asbestos-related exclusions in the insurance policies these carriers sold to it are unenforceable. Id. at *1. GRC moved for partial summary judgment, asserting that the exclusions were not submitted to and formally approved by the Pennsylvania Insurance Department, as required under Pennsylvania law. Id.; see 40 Pa. Cons. Stat. § 477(b) (directing the Pennsylvania Insurance Department to approve or disapprove the form of insurance contract before they are issued and sold). GRC bought the insurance policies at issue between 1979 and 1985, and GRC argued that, at that time, "it was the general policy of the Pennsylvania Insurance Department to disapprove of such [an asbestos-related] exclusion." General Refractories Co., 2012 WL 546936, at *1. GRC submitted that it was entitled to summary judgment because at the time it bought the policies it was against Pennsylvania public policy, as set by the Insurance Department, to permit such an asbestos-related exclusion in insurance policies. Id. at *3-4. Therefore, if the carriers had submitted the asbestos-related exclusions to the Pennsylvania Insurance Department, they would not have been approved. Id. at *1.

The parties presented conflicting evidence regarding whether between 1979 and 1985 Pennsylvania Insurance Department would, as a rule, reject asbestos-related exclusions in insurance policies. Id. at *3-5. Therefore, the court held that there was a genuine issue of

material fact regarding whether such exclusions were against "dominant public policy" in Pennsylvania between 1979 and 1985, and denied summary judgment. Id. at *6.

General Refractories Co. is not persuasive authority to support Papadopoulos's contention that eroding professional liability insurance policies are against Pennsylvania's "dominant public policy." For reasons discussed above, Papadopoulos has not set forth a plausible claim that such policies violate "dominant public policy" in Pennsylvania. Rule 1.4(c) does not prohibit such policies or subject a lawyer who purchases such a policy to legal liability. Additionally, neither the Pennsylvania legislature, courts, nor insurance department have prohibited "eroding limits" policies. Here, there is no genuine issue of material fact as to whether Rule 1.4(c) prohibits an eroding insurance policy or whether such a prohibition is a "dominant public policy" of Pennsylvania.

At the motion to dismiss stage, the court is tasked with deciding whether, accepting as true the factual matters in the complaint, a party has stated a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). Papadopoulos has failed to state a plausible claim that eroding liability insurance policies issued to legal professionals are void as against "dominant public policy" in Pennsylvania. Therefore, Count II of Papadopoulos's Amended Counterclaims will be dismissed with prejudice.

      **B.**    **Count III of the Amended Counterclaims Will Be Dismissed with Prejudice**

In Count III of the Amended Counterclaims, Papadopoulos asserts a cause of action for bad faith against Westport and the Mylonas Defendants, alleging that they unreasonably eroded the limits of the Policy in defending the lawsuit filed by Papadopoulos against the Mylonas Defendants in the Philadelphia Court of Common Pleas. (Doc. No. 27 at 17-20; Doc. No. 28 at 11-14.) At a hearing on the Motion to Dismiss held on June 17, 2015, Papadopoulos agreed to

dismiss Count III of the Amended Counterclaims with prejudice, conceding that a review of the case law made it "improbable that the claim would succeed." (See Doc. No. 42 at 3.) On June 22, 2015, Papadopoulos filed a Motion to Withdraw Count III of the Amended Counterclaims without Prejudice. (Doc. No. 42.) Westport and the Mylonas Defendants oppose Papadopoulos's Motion. They seek dismissal with prejudice. (Doc. Nos. 43, 44.) For reasons stated below, Count III of the Amended Counterclaims will be dismissed with prejudice.

Papadopoulos conceded that he agreed at the June 17, 2015 hearing to withdraw Count III with prejudice, "as neither the present facts as pleaded in the amended counterclaims, nor the applicable case law, could support [him] having standing to bring this claim as there is no privity of contract" between Westport and him because the Policy was issued by Westport to the Mylonas Defendants. (Doc. No. 42 at 4-5.) Now, Papadopoulos wishes to withdraw Count III without prejudice, arguing that under applicable Third Circuit precedent the "better practice" would have been to withdraw Count III without prejudice. (Id.) Papadopoulos bases his argument on Federal Rule of Civil Procedure 41(c), which provides that a party may withdraw a counterclaim without prejudice provided that the opposing party has not filed a responsive pleading. (Id.) He also cites University of Pittsburgh v. Varian Medical Systems, Inc., 569 F.3d 1328 (Fed. Cir. 2009), for the proposition that a dismissal for lack of standing should generally be without prejudice. (Doc. No. 42 at 4.)

Papadopoulos's argument is unavailing, and Count III will be dismissed with prejudice. As Westport notes in its Brief in Opposition to Papadopoulos's Motion to Withdraw Count III without Prejudice, Papadopoulos's agreement at the June 17, 2015 hearing constitutes an enforceable stipulation which should not be lightly set aside. (Doc. No. 43 at 2 (citing Thompson v. Altoona Housing Auth., Civ. No. 10-312, 2011 WL 7039526, at *3 (W.D. Pa. Nov.

15

9, 2011) ("As the United States Court of Appeals for the Third Circuit has explained, allowing parties to easily set aside or modify stipulations would defeat their purpose, wasting judicial resources and undermining future confidence in such agreements. Thus, it is a well-recognized rule of law that valid stipulations entered into freely and fairly and approved by the court, should not be lightly set aside.")).) The fact that the stipulation was oral does not make it any less enforceable. (Id. at 3 (citing Role v. Eureka Lodge No. 434, 402 F.3d 314, 318 (2d Cir. 2005) ("[A] voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court on the record is enforceable even if the agreement is never reduced to writing.")).)

In this case, Papadopoulos agreed to dismiss Count III with prejudice at a hearing in court on the record. In addition, Westport relied on Papadopoulos's statement. Westport was ready to argue its Motion to dismiss Count III at the hearing, and represents that it would have done so if Papadopoulos did not agree to dismiss the claim with prejudice. (Doc. No. 43 at 2.) Accordingly, Westport would be prejudiced if the Court permitted Papadopoulos to recant his stipulation to withdraw Count III with prejudice.

Moreover, University of Pittsburgh does not support Papadopoulos's argument that Count III should have been dismissed without prejudice because the dismissal here was based on the absence of standing. In that case, the court ruled that dismissal based on lack of standing should generally be without prejudice if the defect is curable. 569 F.3d at 1332. In the present case, Papadopoulos's lack of standing is not curable. He was not a party to the contract between Westport and the Mylonas Defendants, and, absent an assignment, he cannot assert a claim for bad faith stemming from that contract. See, e.g., Seasor v. Liberty Mut. Ins. Co., 941 F. Supp. 488, 490 (E.D. Pa. 1996) ("Pennsylvania law makes clear that the insured's duty to act in good

faith belongs to those persons who qualify as 'insureds' under the policy."); Marks v. Nationwide Ins. Co., 762 A.2d 1098, 1101 (Pa. Super. 2000) ("[A] third party may not maintain a bad faith action against a tortfeasor's insurer without first obtaining an assignment from the tortfeasor."). Therefore, Count III of the Amended Counterclaims will be dismissed with prejudice.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Counts II and III of Papadopoulos's Amended Counterclaims will be granted. Counts II and III will be dismissed with prejudice. An appropriate Order follows.