IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PETER G. MYLONAS, LAW OFFICES OF PETER GEORGE MYLONAS, P.C., and ANASTASIOS PAPADOPOULOS,<br><br>　　　　　　Defendants. | CIVIL ACTION<br>NO. 14-5760 |

**OPINION**

**Slomsky, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**August 25, 2016**

**I.　INTRODUCTION**

This declaratory judgment action involves contract interpretation of a professional liability insurance policy. Westport Insurance Corporation ("Westport") has filed the declaratory judgment action against Anastasios Papadopoulos ("Papadopoulos"), and Peter G. Mylonas and the Law Offices of Peter George Mylonas, P.C. (collectively, the "Mylonas Defendants"). Westport seeks a ruling from this Court that its liability to the Mylonas Defendants under a professional liability insurance policy (the "Policy") is limited to $500,000. Papadopoulos seeks a ruling that Westport's liability is limited to $1 million. Westport defended the Mylonas Defendants pursuant to the Policy in a state court lawsuit filed by Papadopoulos. In the lawsuit, Papadopoulos obtained a $525,000 verdict against the Mylonas Defendants.

Before the Court are Cross-Motions for Summary Judgment. (Doc. Nos. 56, 57.) The Mylonas Defendants join in Westport's Motion for Summary Judgment. (Doc. No. 59.) For reasons that follow, Westport and the Mylonas Defendants' Motions for Summary Judgment

(Doc. Nos. 56, 59) will be granted, and Papadopoulos's Motion for Summary Judgment (Doc. No. 57) will be denied.

## II.     BACKGROUND

In December 2010, Westport issued the Policy to the Law Offices of Peter George Mylonas, P.C. (Doc. No. 56-7.) Under the terms of the Policy, Westport defended Peter Mylonas, an attorney licensed in Pennsylvania, and the Law Offices of Peter George Mylonas, P.C. in the state court lawsuit filed by Papadopoulos alleging professional malpractice. (Doc. No. 56-6.) Papadopoulos received a judgment in his favor in the amount of $525,000, and now seeks payment from Westport pursuant to the Policy.

The Policy has a per-claim limit of liability of $500,000 and an aggregate limit of liability of $1,000,000. (Doc. No. 56-7.) As noted, in the present case Westport has filed a Complaint seeking a declaratory judgment that its liability under the Policy is limited to $500,000 on the basis that Papadopoulos's state court lawsuit against the Mylonas Defendants constitutes only one "claim" under the Policy. (Doc. No. 1 ¶¶ 29-31.) Papadopoulos filed a counterclaim seeking a declaratory judgment that the state court lawsuit constitutes more than one "claim" under the Policy, thus establishing that Westport's liability to the Mylonas Defendants is $1,000,000, the full amount of coverage, instead of $500,000 per claim as provided in the Policy. (Doc. No. 27.)

On September 11, 2015, Westport filed a Motion for Summary Judgment. (Doc. No. 56.) The Mylonas Defendants have joined in Westport's Motion. (Doc. No. 59.) Papadopoulos has also filed a Motion for Summary Judgment. (Doc. No. 57.) The Court held a hearing on the

Motions on November 12, 2015. Thereafter, the parties filed supplemental briefs. The Motions are now ripe for a decision.[1]

### A. The Papadopoulos Lawsuit

In the underlying lawsuit in state court, Papadopoulos alleged three claims against the Mylonas Defendants for legal malpractice. (Doc. No. 56-4.) They were for: (1) negligence and/or gross negligence (Count I); (2) breach of fiduciary duties of loyalty, honesty, and candor, undue influence and conflict of interest (Count II); and (3) breach of contract (Count III, improperly labeled as Count IV). (Id.)

Attorney Mylonas had been retained to advise Papadopoulos on forming a corporation, Corinthian Marble and Granite Inc., and to provide related legal services. (Id.) The Amended Complaint alleged in regard to this corporation that "Plaintiff . . . was the victim of a corporate takeover" and "[s]tock was negligently transferred and endorsed by [Mylonas] and as a result of the negligent stock transfer, plaintiff was frozen out of the corporation, physically locked out of the business premises, and the corporation's bank account and assets were converted." (Id. ¶ 1.)

In the first count, Papadopoulos asserted that the Mylonas Defendants "failed to exercise the requisite skill . . . in negligently transferring stock in a corporation in violation of an explicit restrictive covenant to plaintiff's detriment." (Id. ¶ 36.) In the second count, alleging breach of fiduciary duty, Papadopoulos alleged that Mylonas owed him a fiduciary duty and breached that duty "for all the reasons so stated above." (Id. ¶ 41.) Papadopoulos claimed that "[t]hroughout

---

[1] In deciding the Motions for Summary Judgment, the Court has considered the following: the pleadings; Westport's Motion for Summary Judgment (Doc. No. 56); Papadopoulos's Response in Opposition to Westport's Motion (Doc. No. 65); Westport's Reply (Doc. No. 67); Papadopoulos's Motion for Summary Judgment (Doc. No. 57); Westport's Response in Opposition to Papadopoulos's Motion (Doc. No. 64); Papadopoulos's Reply (Doc. No. 68); the Mylonas Defendants' Motion for Summary Judgment (Doc. No. 59); the arguments of counsel at the hearing on the Motions held on November 12, 2015; Westport's Supplemental Brief (Doc. No. 76); and Papadopoulos's Supplemental Brief (Doc. No. 77).

[his] representation, the forming of the corporation, issuance of shares, and negligent transfer of shares, defendant Mylonas . . . had a fiduciary duty of loyalty and care to plaintiff and if such conflict presented itself, then defendant Mylonas had to act with candor which he did not." (Id. ¶ 20.) More particularly, Papadopoulos alleged in the state court action that Mylonas breached his duty of loyalty to Papadopoulos by transferring his stock to unauthorized creditors as part of an illegal company takeover and also gave the corporate kit and records entrusted to him by Papadopoulos to unauthorized individuals. (See Doc. No. 57-1 ¶ 4.) As a result, Papadopoulos lost control of his corporation and was ultimately forced out. Finally, in the breach of contract count, Papadopoulos alleged that "[h]ad Mylonas not improperly, unlawfully, and negligently transferred shares, plaintiff would not have lost his interest in the corporation and his corporation would not have been raided and abandoned . . . ." (Id. ¶ 45.)

Mylonas tendered the Complaint to Westport, his professional liability carrier, seeking defense and indemnification. Westport issued a reservation of rights letter and appointed counsel to defend Mylonas in the state court action. (Doc. No. 56-6.) On September 29, 2014, following trial, the jury found in favor of Papadopoulos on all three claims and awarded damages in the amount of $525,000. (Doc. No. 56-5 at 2, 4-6.)

### B. The Westport Policy

Westport issued a professional liability insurance policy to the Mylonas Defendants. The Policy was in effect from December 13, 2010 to December 13, 2011. (Doc. No. 56-7.) The Policy has a per-claim liability limit of $500,000 and an aggregate liability limit of $1,000,000. (Id. at 5.) The Policy was a "claims-made and reported policy." (Id.) More specifically, coverage was limited to liability only for those claims first made by the named insured and reported to the company while the Policy was in force. (Id.)

The Policy provided two separate and distinct types of coverage, each referred to as a "Coverage Unit," which were for Lawyers Professional Liability and Title Insurance Agent Liability. (Id.) The Lawyers Professional Liability Coverage Unit is the one relevant to this case.[2] The Lawyers Professional Liability Coverage Unit insured counsel as follows:

> The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED becomes legally obligated to pay as a result of CLAIMS first made against any INSURED during the POLICY PERIOD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by reason of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any; . . .

(Doc. No. 56-7 at 18 (Lawyers Professional Liability Coverage Unit, Section I.A.).)

"Claim" is defined as a "demand made upon any INSURED for LOSS . . . including, but not limited to, service of suit or institution of arbitration proceedings or administrative proceedings against any INSURED." (Id. at 15 (General Terms & Conditions, Section XV.A.).)

The Policy also states:

**X. MULTIPLE INSUREDS, CLAIMS AND CLAIMANTS**

> The inclusion of more than one INSURED in any CLAIM or the making of CLAIMS by more than one person or organization shall not increase the limits of liability or the deductible. Two or more CLAIMS arising out of a single WRONGFUL ACT, as defined in each of the attached COVERAGE UNITS, or a series of related or continuing WRONGFUL ACTS, shall be a single CLAIM. All such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM was first made arising out of such WRONGFUL ACT, as defined in the applicable COVERAGE UNIT, and all such CLAIMS are subject to one "Per Claim Limit of Liability" and deductible.

(Id. at 13 (General Terms & Conditions, Section X.).)

"Wrongful Act" is defined in part as "any act, error, omission, (circumstance), PERSONAL INJURY or breach of duty in the rendition of legal services for others, either for a

---

[2] The Declarations, General Terms & Conditions, and terms and conditions of the Lawyers Professional Liability Coverage Unit include the relevant provisions governing this dispute.

fee or pro bono in the INSURED'S capacity as a lawyer . . ." (Id. at 31 (Lawyers Professional Liability Coverage Unit, Section VIII. G.).)

Under the Policy, defense costs and other expenses apply towards the limit of liability. (Id. at 13 (General Terms & Conditions, Section VIII.).) As Westport advised Mylonas in its reservation of rights letter, "[c]laim expenses reduce the available limit of liability on a dollar for dollar basis, once the deductible has been satisfied." (Doc. No. 56-6.) The policy coverage was subject to a "Per Claim Limit of Liability" of $500,000 and an "Aggregate Limit of Liability" of $1,000,000. (Doc. No. 56-7 at 5.) As explained in the "Limits of Liability" provision, the Per Claim Limit of Liability applies when a "claim" has been asserted against the insured:

> . . .
>
> All CLAIMS EXPENSES shall first be subtracted from the applicable "Per Claim Limit of Liability," with the remainder, if any, being the amount available to pay LOSS, as defined in each of the attached COVERAGE UNITS.
>
> The liability of the Company for the combined total of all LOSS, as defined in each of the attached COVERAGE UNITS, and CLAIMS EXPENSES for a CLAIM covered by a COVERAGE UNIT shall not exceed the amount stated in the Declarations as "Per Claim Limit of Liability" for that COVERAGE UNIT.
>
> There shall be no stacking of COVERAGE UNIT limits. If more than one COVERAGE UNIT covers a CLAIM, the Company's liability for the combined total of all LOSS and CLAIMS EXPENSES for the CLAIM shall not exceed the highest single "Per Claim Limit of Liability" as stated in the Declarations for the COVERAGE UNIT(S) which cover the CLAIM.
>
> . . .

(Id. at 13 (General Terms & Conditions, Section VIII.).) While the underlying lawsuit was still pending, Westport sent a letter advising Papadopoulos that the $500,000 Per Claim Limit of Liability applied rather than the $1 million Aggregate Limit of Liability. (Doc. No. 56-9.) This letter was in response to a motion filed by Papadopoulos seeking to "permit evidence of multiple occurrences of negligent conduct" in the underlying lawsuit. (Id.) Both Westport and Mylonas,

the two parties to the contract of insurance, agree that the Policy provides a single "Per Claim Limit of Liability" for the Papadopoulos lawsuit. (Doc. No. 1; Doc. No. 5 ¶¶ 7, 31.)

### III. STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Montgomery Cnty., Pa. v. MERSCORP Inc., 795 F.3d 372, 376 (3d Cir. 2015); see also Fed. R. Civ. P. 56(a). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013). Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (internal quotation marks omitted)).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quotation omitted)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247-49. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party. Id. at 255.

If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. Id. at 248. In ruling on a defendant's motion for summary judgment, a mere scintilla of evidence in support of the plaintiff's position is insufficient. Id. at 252. Enough evidence must exist such that a jury could reasonably find for the plaintiff. Id. The plaintiff cannot merely rely upon assertions or speculation. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985). If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted. Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009).

"The same standards and burdens apply on cross-motions for summary judgment." Allah v. Ricci, 12-4095, 2013 WL 3816043 (3d Cir. July 24, 2013) (citing Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir.1987)). "When the parties have filed cross-motions for summary judgment, as in this case, the summary judgment standard remains the same." Hussein v. UPMC Mercy Hospital, No. 09-547, 2011 WL 13751, at *2 (W.D. Pa. Jan. 4, 2011) (citing Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F.Supp.2d 425, 430 (M.D. Pa .2006)). "When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" Id. (quoting Marciniak v. Prudential Fin. Ins. Co. of Am., 184 F. App'x 266, 270 (3d Cir. 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party

8

deserving of judgment in light of the law and undisputed facts." Id. (citing Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998)).

## IV. ANALYSIS

The crux of this case is a dispute over whether the professional liability insurance policy issued by Westport to the Mylonas Defendants obligates Westport to pay $500,000 or $1,000,000 under the Policy. The amount is critical because defense costs are included in the coverage and Westport spent a considerable amount of the first $500,000 on expenses defending the Mylonas Defendants against Papadopoulos in state court. Westport is willing to tender the amount remaining of the $500,000 to Papadopoulos after deducting these costs. Papadopoulos seeks in this case to have the coverage amount increased to $1 million so he may fully recover the $525,000 awarded by the jury in the underlying lawsuit.

Interpretation of an insurance contract is a question of law for the Court. Lexington Ins. Co. v. Western Penn. Hosp., 423 F.3d 318, 323 (3d Cir. 2005). In Westport Insurance Corporation v. Law Offices of Marvin Lundy, the court noted, "[i]n interpreting an insurance policy, 'the insured has the burden to prove that a particular claim falls within the coverage of [that] policy.' Additionally, insurance policies are treated as contracts, and '[w]here the terms of [the] contract are clear and unambiguous, they must be given their 'plain and ordinary meaning.'" No. Civ. A. 03-cv-3229, 2004 WL 555415, at *7 (E.D. Pa. Mar. 19, 2004) (citations omitted) (alteration in original). Additionally, the court "should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981).

Here, the terms of the insurance policy are clear and unambiguous and show that the limit of liability is $500,000. As noted, the insurance policy in question is a "claims-made policy." The Westport Policy defines a "claim" as "a demand made upon any INSURED for LOSS, as

9

defined in each of the attached COVERAGE UNITS, including but not limited to, service of suit or institution of arbitration proceedings or administrative proceedings against any INSURED." (Doc. No. 56-7 at 15 (General Terms & Conditions, Section XV.A.).) From this definition, it is clear that three examples of what constitutes a "claim" are set forth in the Policy: (1) service of suit; (2) institution of arbitration proceedings; and (3) institution of administrative proceedings. (Id.)

The service of suit provision applies in this case. This provision was triggered when the Mylonas Defendants were sued by Papadopoulos for malpractice and they turned over the claim to Westport as the carrier. See Law Offices of Marvin Lundy, 2004 WL 555415, at *8 (holding that a letter stating intent to file a malpractice suit was a "claim" because it was "demand" for "loss"); Ackerman v. Westport Ins. Corp., No. 06-4142, 2008 WL 4205749, at *5 (D.N.J. Sept. 8, 2008) (holding that a lawsuit constituted a "claim" under a similar insurance policy because "Dynasty served the suit on Ackerman, making a 'demand' for 'monetary [or] compensatory portion of a[ ] judgment.'").

The carrier was given the Complaint and agreed to defend the Mylonas Defendants in accordance with the terms of the Policy. Westport agreed to pay on behalf of the insured all loss in excess of the deductible that the insured became legally obligated to pay as a result of the claims made by the insured during the Policy period by reason of a wrongful act. In addition, the Policy provided that two or more claims arising out of a single wrongful act as defined in the Coverage Unit, or a series of related or continuing wrongful acts, shall be a single claim. (Doc. No. 56-7 at 13 (General Terms & Conditions, Section X.).) As noted, a "wrongful act" is defined under the relevant Coverage Unit in part as "any act, error, omission, (circumstance),

personal injury or breach of duty in the rendition of legal services for others . . . ." (Doc. No. 56-7 at 24 (Lawyer Professional Liability Coverage Unit, Section VIII.G.).)

Thus, the claim in this case was the demand made upon Mylonas by way of service of suit. In the Amended Complaint, Mylonas is charged with attorney malpractice which bears labels of negligence, breach of fiduciary duty, and breach of contract. There is only one plaintiff suing one defendant, which resulted in only one recovery. While in legal vernacular counts in a complaint may be referred to as a "claim" or constituting several claims, the clear and unambiguous definition of a claim in the Policy overrides any colloquial language counsel use when referring to a complaint asserting multiple claims. In the Policy, a claim is unambiguously defined as a demand made upon any insured for loss in a service of suit.

Despite the clear definition of a claim in the Policy, Papadopoulos still asserts that there were multiple "claims" in this case, each of which is subject to a $500,000 per-claim limit of liability, triggering the $1 million aggregate limit of liability under the Policy. Papadopoulos argues that a claim is defined as a wrongful act or a series of related wrongful acts, a wrongful act is defined as a breach of the standard of care, and the Mylonas Defendants committed several unrelated breaches of the standard of care, which caused separate and distinct injuries. Therefore, he argues, the Papadopoulous state court lawsuit constituted multiple claims. (Doc. No. 57 at 4; Doc. No. 65; Doc. No. 77.) Papadopoulous alternatively argues that a jury must hear expert testimony to determine how many breaches there were and whether they were related or unrelated.[3] (Doc. No. 77 at 8.) He argues that his standard of care expert in the state court

---

[3] Papadopoulous also argues that summary judgment should be granted in his favor because Westport did not have the state court jury decide how many breaches of the standard of care there were and has not submitted any expert testimony here to establish how many breaches occurred. (Doc. Nos. 65, 57, 68, 77.) This argument is unavailing because the number of

11

legal malpractice action identified multiple claims because there were at least two causes of injury to Papadopoulos which he claims were separate and distinct. As argued in Defendant Papadopoulos' Supplemental Brief, "[o]ne was the loss of value of Corinthian Marble as identified by Westport at oral argument, and the other was the confession of judgment in the loan document defendant Mylonas negligently drafted and which resulted in Mr. Papadopoulos waiving his constitutional rights to contest payment of a $400,000 loan. The two injuries are entirely separate and distinct and are unaddressed by Westport."[4] (Doc. No. 77 at 12.) Papadopoulos further argues that these are two or more unrelated claims whose only relation is that Mylonas caused both injuries. (Id.) These arguments are unpersuasive.

Courts have considered whether claims of legal malpractice constitute one or more claims under an insurance policy and have found that the number of counts is not dispositive. In Bay Cities Paving & Grading, Inc. v. Lawyers Mutual Insurance Co., a California Supreme Court case relied upon as authoritative by Papadopoulos, the court rejected the argument that a lawsuit asserting two counts constituted two "claims" within the meaning of a professional liability insurance policy, stating, "[w]e do not suggest that the number of claims is determined by rules of pleading." 855 P.2d 1263, 1265 (Cal. 1993). The insurance policy in Bay Cities contained similar provisions to those at in the present case. The court held:

> [The client] had one primary right – the right to be free of negligence by its attorney in connection with the particular debt collection for which he was retained. [The attorney] allegedly breached that right in two ways, but it nevertheless remained a single right.

---

breaches of the standard of care by the Mylonas Defendants is not the relevant inquiry under the facts of this case.

[4] Papadopoulos also claims that his standard of care expert identified multiple claims because there were at least three separate causes: (1) negligent drafting of confession of judgment in a promissory note; (2) negligent stock issuance to another individual; and (3) negligent stock transfer. (Doc. No. 77 at 13-18.)

12

> . . .
>
> [W]hen . . . a *single* client seeks to recover from a *single* attorney alleged damages based on a *single* debt collection matter for which the attorney was retained–there is a *single* claim under the attorney's professional liability insurance policy.

Id. at 1266. The court went on to hold that even if the attorney's two omissions gave rise to separate claims, they would still be found to be a single "claim." Id. at 1275. This was in part because, although the insured attorney committed multiple errors, the errors were "related" in that they were committed by the same attorney, as to the same client, arose out of the same transaction, and resulted in the same injury. Id. So too in this case, where a single attorney (Mylonas) committed multiple errors with respect to a single client (Papadopoulos) arising out of work performed by Mylonas for Corinthian. See also Gregory v. Home Ins. Co., 876 F.2d 602, 603-06 (7th Cir. 1989) (class action lawsuit filed by third-party claimants against lawyer alleging violations of federal securities laws, RICO and common law fraud, and cross-claim filed by client against lawyer alleging professional negligence all constituted one "claim" under lawyers professional liability insurance policy); Bar Plan Mut. Ins. Co. v. Chesterfield Mgmt. Assoc., 407 S.W.3d 621, 628 (Mo. Ct. App. 2013) (holding that three counts in the complaint alleging attorney malpractice under theories of breach of contract and negligence related to the attorney's handling of a real estate transaction "constituted a single claim" within meaning of professional liability policy, and a fourth count asserted in an amended pleading for inadequate insurance coverage was related in that they were all part of the attorney's representation in the real estate transaction).

In Borough of Moosic v. Darwin National Assurance Company, the Third Circuit held that a civil rights lawsuit was a single "claim," defined in a professional liability policy as a "written demand for monetary damages or non-monetary relief," finding that the action was "a

claim under the policy because it sought monetary damages . . . was first made during the policy period . . . [and] alleged civil rights violations, which constitute a public official's wrongful acts . . . ." 556 Fed. App'x 92, 96 (3d Cir. 2014). Notably, the complaint in the civil rights lawsuit asserted six causes of action against Moosic, including but not limited to a violation of constitutional right to free speech, retaliation, conspiracy, and adverse possession of property. See Brief for Appellants at *3-5, Borough of Moosic, 2013 WL 784421 (3d Cir. Feb. 25, 2013) (No. 12-3141).

Accordingly, regardless of how Papadopoulos frames the contentions made in the underlying lawsuit for the purpose of interpreting the professional liability policy purchased by the Mylonas Defendants, the demand in the form of service of the suit constitutes only one claim under the Policy and is subject to the "Per Claim limit of liability of $500,000."[5]

Here Mylonas was retained to perform legal services for Papadopoulos in regard to the Corinthian corporation. While the services had several components, they were all related to the representation of Papadopoulos in regard to the corporation. The Mylonas Defendants were retained to form Corinthian and to provide related legal services, and it is from these legal

---

[5] Papadopoulos also argues that the legal malpractice committed by Mylonas did not arise out of a single wrongful act because his acts did not constitute a series of related or continuing wrongful acts, and therefore several claims existed. However, the claim here involved the same attorney, the same client, and legal services regarding the same corporation. While Pennsylvania courts have not defined "related," other courts that employ the same "plain and ordinary meaning" standard have joined the majority and defined the term broadly. See e.g., Lexington Ins. Co. v. St. Bernard Parish Gov't, 548 Fed. App'x 176, 179 (5th Cir. 2013) (citations omitted) ("related" is a broad term to be construed using the "plain, ordinary and generally prevailing meaning" and "covers logical or causal connections between acts or occurrences"); Gregory, 876 F.2d at 606 ("[T]he common understanding of the word 'related' covers a very broad range of connections, both causal and logical.") Therefore, even if the underlying lawsuit constituted multiple claims, they were a "series of related or continuing wrongful acts" and subject to a single "Per Claim Limit of Liability."

14

services that Papadopoulos' legal malpractice claim stem. For this reason, they were related and continuous and therefore constituted a single claim under the insurance policy.

Although Papadopoulos faces a reduced recovery from the amount he was awarded by the jury in the underlying state case because of this Court's finding on the coverage limit under the Policy, it is not the prerogative of this Court to rewrite the insurance contract. See Borough of Moosic, 556 Fed. App'x at 96 (quoting Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) ("When the language of an insurance contract is clear and unambiguous, a court is required to enforce that language."); Gregory, 876 F.2d at 606 ("Parties are generally free to include language of their choice in contracts, and courts should refrain from rewriting them.") An insurance policy is a contract between the insurer and insured and its terms must be followed.

## V. CONCLUSION

Based upon the forgoing, Westport Insurance Corporation's Motion for Summary Judgment will be granted and Defendant Anastasios Papadopoulos' Motion for Summary Judgment will be denied. Defendants Peter G. Mylonas and the Law Offices of Peter George Mylonas, P.C. have joined in Westport Insurance Corporation's Motion for Summary Judgment and that motion will be granted. An appropriate Order follows.